# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BARRETT GRABLE, JR.,

    Petitioner,    :  Case No. 3:16-cv-273

 - vs -         District Judge Thomas M. Rose
            Magistrate Judge Michael R. Merz

NEIL TURNER, Warden,

            :

    Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is an action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus; Petitioner seeks release from confinement imposed as part of the judgment of the Clark County Common Pleas Court on Mr. Grable's convictions on one count of aggravated robbery and two counts of kidnapping.

Petitioner pleads the following grounds for relief:

> **Ground One:** Petitioner's Constitutional Right of Double Jeopardy was violated when the trial court failed to merge the criminal convictions for Agg Robbery and Kidnapping under [Ohio Revised Code §] 2941.25 for allied offenses.
>
> **Supporting Facts:** The trial court failed to merge Count 1 robbery and Count 2 kidnaping. The court found that defendant possessed a separate animus for counts 1 & 2. The court found the kidnapping in count 3 merged with the robbery & merged those offenses. The court sentenced the defendant to consecutive sentence[s] for counts 1 & 2 even though they are allied offense[s].
>
> **Ground Two:** The trial court improperly imposed a consecutive sentence when it did [not] make proper findings for imposition.

1

**Supporting Facts:** There was insufficient evidence to prove agg. Robbery. Imposition of consecutive sentences cannot be applied when elements of the crime is [sic] not legally sound.

**Ground Three:** Trial counsel failed to present Defendant's mental health evaluation written by Oh[io] Dept. of Mental Health.

**Supporting Facts**: defendant suffers from acute mental health issues prior to trial in which he was committed to a mental health institution on 2 different occasions. The Department of Mental Health diagnosed the Defendant with several psychosis [sic]. This evidence was never presented to the trial court.

**Ground Four:** Counsel failed to advise defendant of the available remedy of post-conviction [Ohio Revised Code §] 2953.21 & the time limit to file.

**Supporting Facts:** Counsel failure to communicate on the available remedy to file a post conviction petition before the time limit expired has caused prejudicial error. The defendant has evidence dehors the record & can only be presented to the court in a post conviction petition.

(Petition, ECF No. 1.)

Mr. Grable filed his Petition June 24, 2016 (ECF No. 1). The Court ordered the State to answer which it did, accompanied by the state court record (Return of Writ, ECF No. 10; State Court Record, ECF No. 9). Mr. Grable has now filed a Reply (ECF No. 11), making the case ripe for decision.

**Procedural History**

Mr. Grable was indicted on the offenses of conviction by the Clark County grand jury on November 13, 2012. He initially sought to plead not guilty by reason of insanity but withdrew the request when he was found competent to stand trial. He was found guilty by the trial jury of aggravated robbery and one count of kidnapping each for offenses against Megan Roach and

2

Brian Patterson. The trial court merged the Patterson kidnapping count with the aggravated robbery, but found a separate animus for the kidnapping of Ms. Roach. Mr. Grable was then sentenced to ten years for the robbery and a consecutive five years for the Roach kidnapping.

Petitioner appealed to the Second District Court of Appeals raising three assignments of error:

1. Appellant's conviction and sentence must be reversed because he was subjected to double jeopardy by the trial court's failure to merge the offenses of kidnapping and aggravated robbery.

2. Appellant's sentence must be vacated because it included consecutive sentences which were improperly imposed.

3. There was insufficient evidence to sustain a conviction of aggravated robbery.

(State Court Record, ECF No. 9, Page ID # 56, Ex. 10). The Ohio Second District Court of Appeals affirmed the conviction and sentence. *State v. Grable,* 2015-Ohio-788, 2015 Ohio App. LEXIS 762 (2nd Dist. Mar. 6, 2015); appellate jurisdiction declined, 143 Ohio St. 3d 1406 (2015).

On November 9, 2015, Mr. Grable filed an application for delayed reopening of his direct appeal, asserting ineffective assistance of appellate counsel for failure to raise two assignments of error:

> 1. Counsel on appeal was ineffective for failing to argue that trial counsel's performance was grossly incompetent for failing to present documented evidence of Defendant's diagnosed psychosis and mental health evaluation that was submitted by the Ohio Department of Mental Health and the prescribed medications that he was ingesting before & during the criminal trial & Competency Hearing.
>
> 2. Defendant was deprived of effective assistance of appellate counsel for not being advised of time limitation for filing post-conviction proceeding & trial counsel's ineffective assistance was

> not presented for determination on appeal due towards (sic) appeal
> counsel's failure.

(ECF No. 9, PageID 162-67.)  The Second District found that the Application was untimely and

declined to consider it on the merits.  *Id.*  at PageID 203-04.  The Ohio Supreme Court again

declined to exercise appellate jurisdiction.


# Analysis


The Second District's opinion on direct appeal contains a statement of the background

facts of the case:

> **[*P3]** The record reflects that the charges against Grable stemmed
> from a robbery at Young's Jersey Dairy around 1:00 a.m. on
> August 25, 2012. One of the State's primary witnesses at trial was
> store manager Megan Roach. She testified that after closing the
> store for the night she exited a back door with a co-worker and
> proceeded to an employee parking area. Roach noticed an "extra"
> car in the lot, an older beige or silver car that she did not recognize.
> She nevertheless proceeded to her own car and got inside. Upon
> doing so, she saw two men approach her driver's-side door. One
> was wearing a Spiderman zip-up "hoodie" and the other was
> wearing black clothing and a ski mask. The men proceeded to grab
> Roach and remove her from her car. While brandishing aluminum
> baseball bats, they then directed her to take them to the store's safe.
> After Roach responded that she did not have a key to get back
> inside the store, the men took her behind a set of dumpsters and
> bound her hands behind her back with duct tape. They also placed
> duct tape over her mouth. Roach testified that she remained there
> with one of the men while the other man walked away. She
> recalled one of the men getting "frustrated" because they could not
> get into the store.

> **[*P4]** When the second man returned about five minutes later,
> Roach helped her captors devise a plan to enter the store. She did
> so because she was tied up behind the dumpsters and feared what
> they might do if she refused. The plan involved Roach ringing the
> store's doorbell to get another employee to open the locked door.

Roach proceeded to ring the doorbell, which resulted in employee Brian Patterson opening the door. Still carrying baseball bats and wearing rubber gloves, the two men then entered the store with Roach, who used a pass code to get them into an office with the safe. Roach opened the safe, and the men took the cash and some of the change. They put the money in a duffle bag. They also bound Roach and Patterson with duct tape. The two men then exited the office, leaving Roach and Patterson alone there. A few minutes later, Roach heard the two men try to re-enter the office. They were unable to do so, however, because the door had locked behind them. The men then left the store, and Patterson called 911 after freeing himself from the duct tape.

[*P5] After police arrived, Roach told an officer she believed one of the perpetrators was Barrett Grable. Although she had not seen either man's face, she knew Grable because he was dating Candace Cumberland, another store employee with whom Roach was good friends. Roach stated that she had been around Grable four or five times and had seen him the prior week at Cumberland's house. She also had seen him on other occasions at the store. She testified that she was familiar with his voice, his build, and his mannerisms.[1] When asked why she believed Grable was one of the perpetrators, Roach explained: "Well, I definitely picked up on his voice. Before he spoke, I would not have known it was him, otherwise. I really couldn't see him. But when he spoke, that was when I, kind of, suspected. But then, I think I was just nervous, and as he talked more, I became more sure it was him." (Trial Tr. at 92). Roach also testified that Cumberland knew cash was kept in the store overnight and that bank deposits were not made until the following morning.

[*P6] The State also presented testimony from Brian Patterson. His testimony was generally consistent with Roach's recollection of what happened inside the store. Unlike Roach, Patterson was unable to identify either of the perpetrators. Patterson recalled, however, seeing one of them wearing a torn glove. In addition, the State presented testimony from two police officers who responded to Patterson's 911 call and from a detective who collected crime-scene evidence. The detective, David Perks, explained that he collected a baseball bat and pieces of duct tape found in the office and by the dumpsters. Another witness, Devonie Herdeman, a forensic scientist at the Bureau of Criminal Investigation, testified that she analyzed a DNA sample from Grable. She also analyzed DNA obtained from two small pieces of latex glove stuck to the duct tape collected at the crime scene. According to Herdeman, one of the pieces of latex contained a mixture of DNA from at least

two contributors. She testified that "Grable was one of the contributors." (*Id.* at 172-173). With regard to the second piece of latex glove, Herdeman was more specific. She identified Grable as a major contributor to the DNA found on the second piece of latex and opined that the chance of it being someone else was one in 108 trillion. (*Id.* at 175-177).

[*P7] For his part, Grable attempted to assert an alibi defense. Cumberland, his girlfriend and the mother of his child, testified that Grable was taking medication that caused him to fall asleep early, that he was residing with an aunt in Columbus at the time of the robbery, and that he lacked a vehicle and could not drive anyway due to his medication. On cross examination, Cumberland admitted that she could not say Grable was in bed at his aunt's house when the robbery occurred because she was not there. She also admitted never contacting police to tell them she believed Grable had been at his aunt's house.

[*P8] Grable also presented testimony from Angela Howard, his aunt from Columbus. She testified that she knew he was with her at her house when the robbery occurred because she saw him there. She also testified that he had no vehicle available to him. Finally, Howard testified that she had no idea Grable had been charged with a crime until she received a subpoena to testify at trial.

[*P9] Based on the evidence presented, a jury found Grable guilty on one count of aggravated robbery and two counts of kidnapping (one each for kidnapping Roach and Patterson). The trial court found that the count related to the kidnapping of Patterson merged into the aggravated robbery, and the State elected to proceed to sentencing on aggravated robbery. The trial court also found, however, that the count related to the kidnapping of Roach did not merge into the aggravated robbery because a separate animus existed. (Sentencing Tr. at 11-12). After reviewing a presentence-investigation report, hearing arguments from counsel, and giving Grable an opportunity to make a statement, the trial court imposed consecutive prison sentences of ten years for aggravated robbery and five years for kidnapping. This appeal followed.

*State v. Grable, supra.*

**Ground One:  Double Jeopardy**

In his First Ground for Relief, Mr. Grable asserts his right to be protected from being placed twice in jeopardy for the same offense was violated when the trial court refused to merge the charge of kidnapping Megan Roach with the aggravated robbery charge. This claim was the First Assignment of Error on direct appeal and was decided by the Second District as follows:

[*P10] In his first assignment of error, Grable challenges the trial court's failure to merge the count related to the kidnapping of Roach into the aggravated robbery conviction. He argues that kidnapping Roach was essential to the robbery and was without independent significance. Therefore, he claims merger was required under R.C. 2941.25, Ohio's allied-offense statute.

[*P11] Because Grable preserved his allied-offense argument below, we review the trial court's merger ruling de novo. *State v. Forney*, 2d Dist. Champaign No. 2012-CA-37, 2013-Ohio-3034, ¶ 16. The allied-offense statute, R.C. 2941.25, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

[*P12] "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at syllabus. "[T]he question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." *Id.* at ¶ 48. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were

7

committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" (Citation omitted.) *Id.* at ¶ 49. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50. "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

**[\*P13]** Grable correctly argues that kidnapping and aggravated robbery can be committed with the same conduct. Indeed, implicit in every aggravated robbery is a kidnapping insofar as an offender at least temporarily must restrain the victim to commit a theft. *State v. Johnson*, 2d Montgomery No. 26323, 2015-Ohio-347, ¶ 14, citing *State v. Jenkins*, 15 Ohio St.3d 164, 198, 15 Ohio B. 311, 473 N.E.2d 264 (1984), fn. 29. Kidnapping and aggravated robbery are not always allied offenses of similar import subject to merger, however, because they can involve distinct acts. Even when they involve the same conduct, they also each can involve a separate animus. "A separate animus for kidnapping exists where (1) 'the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance independent of the other offense,' or (2) 'the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime.'" *Id.* at ¶ 14, citing *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1975), syllabus.

**[\*P14]** Here we see no error in the trial court's failure to merge the kidnapping involving Roach with the aggravated robbery. At sentencing, the State persuasively argued that Grable committed an act of kidnapping when he and his accomplice pulled Roach from her car and escorted her to a secluded area behind a set of dumpsters, where they bound her hands with duct tape and placed tape over her mouth after discovering that she did not have a key to the store. As set forth above, Roach remained confined behind the dumpsters for about five minutes until she helped the perpetrators devise a plan to gain entrance without a key.

**[\*P15]** In *Logan*, the Ohio Supreme Court recognized that the "primary issue" when determining whether kidnapping merges with another offense "is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Logan* at 135. In our view, the act of restraining Roach behind the dumpsters for several minutes went well beyond the

> restraint that has been recognized as being implicit in every aggravated robbery. The restraint behind the dumpsters was not merely incidental to the aggravated robbery that followed inside the store, and it was substantial enough to have significance independent of the later aggravated robbery. The animus, or immediate purpose, for restraining Roach behind the dumpsters appears to have been to keep her quiet and to avoid detection while Grable and his accomplice decided how to proceed without a store key. Roach's continued confinement became incidental to the aggravated robbery only after she helped the perpetrators enter the store by ringing the doorbell and getting Patterson to open the door. Therefore, we see no error in the trial court's finding that the kidnapping charge related to Roach did not merge with the aggravated robbery. Accordingly, the first assignment of error is overruled.

*State v. Grable, supra.*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.   And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).  The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim.  *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010).  "What determines whether

the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013) *citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

As the court of appeals found in this case, the kidnaping of Megan Roach was indeed committed separately from the aggravated robbery. Ms. Roach had been removed from her car, placed behind the dumpster and restrained with duct tape. If Grable and his co-conspirator had left at that point, frustrated in their plan to rob the store, the kidnaping would have been complete. Moreover, kidnaping and aggravated robbery have different elements from a *Blockburger* perspective: no weapon and no theft are needed for the kidnaping offense. Punishing Grable cumulatively for the kidnaping and aggravated robbery does not violate the Double Jeopardy Clause.

**Ground Two: Improper Consecutive Sentences**

In his Second Ground for Relief, Grable asserts he was improperly sentenced to consecutive sentences because the trial court did not make the required findings. He pleads in the Petition and makes clearer in his Traverse that he is asserting there was insufficient evidence to convict him of aggravated robbery.

The Warden asserts that this claim is different from the claim he presented to the Ohio courts (Return of Writ, ECF No. 10, PageID 276-78.

Grable seems to be combining in his Second Habeas Ground for Relief the two claims he raised separately as Assignments of Error Two and Three on direct appeal. In considering the consecutive sentences issues, the Second District decided:

> **[\*P16]** In his second assignment of error, Grable asserts that the trial court erred in imposing consecutive sentences. He advances two related arguments in support. First, he contends the trial court made no determination that his conduct warranted consecutive sentences. Second, he claims the trial court improperly imposed consecutive sentences based solely on his criminal history without considering his conduct. [Footnote omitted.]

> **[\*P17]** Upon review, we find no error in the trial court's imposition of consecutive sentences. Under R.C. 2929.14(C), a trial court may impose consecutive sentences if it determines that (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

> R.C. 2929.14(C)(4)(a)-(c).

**[\*P18]** Here the trial court stated:

In reviewing [the statutory seriousness and recidivism factors] in order to determine a sentence that would adequately punish the Defendant and protect the community under [R.C.] 2929.11 and following the guidelines of [R.C.] 2929.13, the Court has found that the victim of the offense—and I'm referring to the victim in Count Two [Roach], the kidnapping, based on the presentence report of the victim-impact statement—suffered severe psychological and emotional harm to the extent that it actually has become—she has suffered physical harm with physical illness as a result of the event. She had to move out of the area, take a job in another location which has caused her economic difficulties; but I don't consider the economic harm to that victim as a factor here in that it was probably something that could not have been anticipated by the offense.

As to the business itself, it also suffered serious economic harm. Thousands of dollars were lost. They ended up having to pay a thousand dollars for the part that was not recovered by insurance. I don't find any factors that make this less serious.

For the record, I've taken into consideration prior psychological reports that were presented to the Court and the competency evaluation. I also read the information on the report that was prepared for the NGRI defense that the plea was subsequently withdrawn. The information in that report was substantively similar to the competency evaluation.

The Defendant is 26 years of age. He was under post-release control at the time of the commission of this offense. Again, this was for similar activity, after spending a significant amount period of time in prison.

He does have a prior adjudication of delinquency. Those adjudications were for burglary and receiving stolen property.

It's already been pointed out his history of criminal convictions, being on post-release control at the time of the offense. The Defendant has not responded favorably to sanctions previously imposed with the prior conviction. I have not found any genuine remorse. I have limited personal information other than the psychological reports and I don't have any information regarding, and it doesn't appear, that he has any military record to consider.

There was no ORAS evaluation in this case. The aggravated robbery is a felony of the first degree; kidnapping, a felony of the second degree.

Based on the factors that have been found by the Court and the facts of the case, the harm done, circumstances under which the event occurred, the Defendant being on post-release control at the time, it's the order of the Court as to the aggravated robbery, felony of the first degree, that the Defendant be sentenced to ten years in the State penitentiary. He's ordered to pay $1,000 in restitution to the Court's Probation Department plus a 5 percent handling fee.

As to Count Two, the kidnapping charge, the Defendant is to serve five years in the State penitentiary.

\* \* \*

Count Two is ordered to be served consecutive to Count One. The Court having found that consecutive sentences [are] necessary to protect the public from future crimes, punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct which is a danger he poses to the public. The Court also finds the Defendant committed offenses while on post-release control, and his criminal history demonstrates that consecutive sentences are necessary to protect the public from future crimes by the Defendant.

\* \* \*

Count Two is ordered to be served consecutive to Count One. The Court having found that consecutive sentences [are] necessary to protect the public from future crimes, punish the offender, and that consecutive sentences are not  disproportionate to the seriousness of the Defendant's conduct which is a danger he poses to the public. The Court also finds the Defendant committed offenses while on post-release control, and his criminal history demonstrates that consecutive sentences are necessary to protect the public from future crimes by the Defendant.

(Sentencing Tr. at 12-15).

 **[\*P19]**  The foregoing statements by the trial court reflect that it properly considered, among other things, the statutory seriousness and recidivism factors. The seriousness factors address the relative seriousness of Grable's conduct in this case. *See* R.C. 2929.12(B)

and (C). As quoted above, the trial court also stated that it had considered "the facts of the case, the harm done, [and the] circumstances under which the event occurred[.]" (Sentencing Tr. at 14). This statement further demonstrates the trial court's consideration of Grable's conduct. In addition, with regard to the imposition of consecutive sentences, the last paragraph quoted above reflects that the trial court made all of the findings necessary under R.C. 2929.14(C)(4). It also properly included the findings in its judgment entry. (Doc. #47 at 2). The consecutive-sentence findings themselves obligated the trial court to consider, among other things, "the seriousness of the offender's conduct[.]" R.C. 2929.14(C)(4). Therefore, we are unpersuaded by Grable's claim that the trial court improperly imposed consecutive sentences based solely on his criminal history without addressing or considering his conduct in this case.

[*P20] Finally, we do not clearly and convincingly find under R.C. 2953.08(G)(2) that the record fails to support the trial court's consecutive-sentence findings. The trial court's statements during the sentencing hearing regarding Grable's criminal record in particular are supported by the PSI. It reflects that twenty-six year-old Grable had a prior juvenile record for offenses including burglary and receiving stolen property. As a juvenile, he received a suspended commitment to the Department of Youth Services. As an adult, Grable served approximately four years in prison for aggravated robbery of a motel with a firearm before being paroled in June 2011. He committed the present offenses a year later. The record reflects that he refused to cooperate with the Clark County Adult Probation Department in the preparation of the PSI and, as noted above, the trial court found no genuine remorse. The second assignment of error is overruled.

*State v. Grable, supra.*

As the Warden points out in the Return of Writ, the question whether the state law of sentencing has been properly applied in a given case is purely a matter of state law, so long as the Defendant has not been sentenced for more than the maximum term of imprisonment allowed for any one of the offenses of conviction. To put it another way, Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455

14

U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The second part of this Ground for Relief, which was raised as the third assignment of error on direct appeal, does state a constitutional claim, at least insofar as it claims the evidence for aggravated robbery was insufficient.   An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012).

Grable's argument on direct appeal was that the aluminum baseball bat he was carrying at the time of the offenses was not a deadly weapon.  The Second District wrote:

> **[*P26]** With the foregoing standards in mind, we conclude that Grable's aggravated-robbery conviction is supported by legally sufficient evidence and is not against the manifest weight of the

evidence. The aggravated robbery statute provides, in relevant part, that no person attempting or committing a theft offense shall "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2911.01(A)(1). "A deadly weapon" includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2911.01(D)(1) citing R.C. 2923.11(A).

[*P27] Here the jury reasonably could have found that the aluminum baseball bats carried by the perpetrators qualified as deadly weapons. The State presented evidence that a baseball bat can cause death if it is used to strike someone in the head. (Trial Tr. at 138). Moreover, the record supports a finding that Grable possessed and carried a baseball bat as a weapon rather than as a piece of sports equipment. We see no plausible reason for him to be carrying a baseball bat at 1:00 a.m. while robbing a store other than to threaten and intimidate Roach and Patterson into complying with his demands. In fact, one of the perpetrators told Roach she would not get hurt *if* she took them to the safe. (*Id*. at 98). The implication was that she might get hurt, apparently with a baseball bat, if she did not comply.

[*P28] The record also supports a finding that Grable displayed or brandished a baseball bat, a deadly weapon, while committing a theft offense, as required for a conviction under R.C. 2911.01(A)(1). Roach recalled seeing each perpetrator holding a baseball bat when she encountered them in the parking area. (*Id*. at 81). They continued to carry the baseball bats when they entered the store and proceeded to the safe. (*Id*. at 84-85, 104). Patterson likewise recalled seeing the two perpetrators inside the store with baseball bats. One had a bat over his shoulder, and the other had a bat "down between his hands." (*Id*. at 114). In light of this testimony, we find legally sufficient evidence to sustain Grable's aggravated robbery conviction. We also find no ineffective assistance of counsel resulting from the lack of a Crim.R. 29 motion. Because the State presented legally sufficient evidence to sustain Grable's aggravated robbery conviction, such a motion properly would have been denied.

*State v. Grable, supra.*

It is clears from ¶ 24 of the opinion that the Second District was employing the correct

*Jackson v. Virginia* standard as incorporated into Ohio case law. It wrote:

**[\*P24]**  When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Grable, supra.*  Its application of that standard to the facts as it found them is not objectively unreasonable.  What, indeed, was the Petitioner doing with an aluminum baseball bat in the parking lot of Young's Jersey Dairy at 1:00 in the morning except using it as a weapon with which to threaten Megan Roach?

**Ground Three:  Ineffective Assistance of Trial Counsel**

**Ground Four:  Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Mr. Grable contends his trial attorney provided ineffective assistance, in violation of the Sixth Amendment, when he failed to present to the trial court evidence from the Ohio Department of Mental Health of its evaluation, including diagnosis of several psychoses.

As the Return of Writ points out and Grable admits, this claim depends on evidence outside the record.  Under Ohio law, claims of ineffective assistance of trial counsel which depend on this sort of evidence must be presented in a petition for post-conviction relief under Ohio Revised Code § 2953.21 which Grable has never filed.  The time limit for filing such a

petition has expired, and the Warden therefore argues Mr. Grable has procedurally defaulted this claim.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

There is no doubt Ohio places a strict time limit on post-conviction petitions and that Mr. Grable has not met that deadline. Nor is there any doubt the Ohio courts would enforce the deadline if he now attempted to file a post-conviction petition. Therefore his claim of ineffective assistance of trial counsel for failure to present the records is procedurally defaulted unless he can show cause and prejudice to excuse the default.

Mr. Grable attempts to do so by claiming ineffective assistance of appellate counsel for failure to advise him of the deadline for a post-conviction petition. Under federal law, before the ineffective assistance of an appellate attorney can be used to excuse the ineffective assistance of a trial attorney, the ineffective assistance of appellate counsel claim must itself be properly presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000). In Ohio the sole remedy for ineffective assistance of appellate counsel is by way of an application for reopening under Ohio R. App. P. 26(B). Petitioner attempted that approach but filed his Application many

months beyond the deadline.  The Second District Court of Appeals enforced against him the ninety-day deadline for such applications.  The federal courts have held the timeliness rule for filing 26(B) applications is an adequate and state court rule.  *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).  Since 1996, "Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B)," and "'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012), *quoting Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th  Cir. 2010) (*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th  Cir. 2008)). Thus, Rule 26(B) is an adequate and independent ground on which to find procedural default. *Id.*

Mr. Grable has not shown good cause for his failure to timely file a petition for post-conviction relief.  His Third Ground for Relief is therefore procedurally defaulted.  And he has not shown good cause for his failure to timely file his 26(B) application, so his Fourth Ground for Relief is also procedurally defaulted.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, the Court should also deny any requested certificate of appealability and certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to

proceed *in forma pauperis*.

December 27, 2016.

s/ *Michael R. Merz*
Michael R. Merz
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).